UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS RUSSELL,

Plaintiff,

v.

Civil Case No. 14-14230
Honorable Linda V. Parker

CSK AUTO, INC., n/k/a
O'REILLY AUTO
ENTERPRISES, LLC.,

Defendant.
___________________________/

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF NO. 34], (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 35], AND (3) DISMISSING WITH PREJUDICE PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

## I. Introduction

On November 3, 2014, Plaintiff Thomas Russell ("Plaintiff") filed this lawsuit against Defendant CSK Auto, Inc., n/k/a O'Reilly Auto Enterprises, LLC ("Defendant"), alleging that Defendant retaliated and constructively discharged him in violation of the Federal Medical Leave Act. (ECF No. 1.) Presently before the Court are Plaintiff's motion for partial summary judgment (ECF No. 34) and Defendant's motion for summary judgment (ECF No. 35) pursuant to Federal Rule of Civil Procedure 56. Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court dispensed with oral argument pursuant to Eastern

District of Michigan Local Rule 7.1(f) on July 1, 2016. (ECF No. 43.) For the reasons that follow, the Court is denying Plaintiff's motion for partial summary judgment, denying Defendant's motion for summary judgment, and dismissing Plaintiff's claim of intentional infliction of emotional distress.

## II. **Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Anderson*, 477 U.S. at 252.

Courts evaluate cross-motions for summary judgment under the same standard. *La Quinta Corp. v. Heartland Props., LLC*, 603 F.3d 327, 335 (6th Cir. 2010) (citing *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)). When faced with cross- motions for summary judgment, each motion is examined on its own merits. *Id*.

## III. Factual Background

This dispute arises from Plaintiff's FMLA leave in 2010 and 2012 and compensation.

Plaintiff was employed by Defendant from June 14, 1988 to September 9, 2013. (ECF No. 1 ¶ 3.) Plaintiff injured his ankle in 2010 and subsequently took FMLA leave from September 28, 2010 until December 21, 2010. (*Id.* ¶ 6.) Plaintiff suffered another injury in December 2012 and again went on FMLA leave, starting December 12, 2012. (ECF No. 1 ¶¶ 9, 10.)

Plaintiff's compensation while employed with Defendant was based on "assurance pay." Assurance pay "guaranteed a certain level of income by providing a minimum level of income if store-based commissions were not higher than the assured amount." (ECF No. 34 at Pg ID 152.) The goal of assurance pay

was for the store manager to increase sales in their particular store so that the profits of the store could pay the store manager's salary. (ECF No. 35 at Pg ID 336.) Store managers were evaluated after the first year the assurance pay structure was introduced to determine whether the managers should remain on the assurance pay plan. (*Id*.)

Plaintiff was twice taken off the assurance plan. The facts surrounding his removal from assurance pay are in dispute. Plaintiff alleges that he was first removed from assurance pay in 2010 while he was on FMLA leave. (ECF No. 34 at Pg ID 153.) During this time, Plaintiff states he was harassed by his district manager to return to work. (ECF No. 1 ¶ 7.) Defendant, however, argues that Plaintiff was advised he would be removed from the assurance plan on September 17, 2010, before Plaintiff took FMLA leave starting September 28, 2010. (ECF No. 35 at Pg ID 337-38.) Further, Defendant denies any harassment. (ECF No. 5 ¶ 7.)

Plaintiff was placed back on the assurance plan after sending a letter to the regional manager complaining of the reduction in pay. (ECF No. 34 at Pg ID 453.) When Plaintiff returned to work, he was transferred to a new location and was told "as long as [your] sales continue[] to grow, [you will] not be removed from [your] assurance pay." (ECF No. 34 at Pg ID 153; ECF No. 1 ¶ 8.)

Plaintiff states he was next removed from the assurance plan during his FMLA leave in December 2012. (ECF No. 34 at Pg ID 153.) Plaintiff alleges he was not notified of his removal from the assurance plan until February 14, 2013—nearly six weeks after the change in pay occurred. (*Id.*)[1] Plaintiff was told he was removed due to "poor sales, despite the fact that sales increased year after year…" (*Id.* at Pg ID 154.)

Defendant disagrees with Plaintiff's allegations surrounding his removal from assurance pay in 2012. Defendant states that Plaintiff went on FMLA leave from December 12, 2012 to January 14, 2013. (ECF No. 35 at Pg ID 338.) According to Defendant, Plaintiff was advised in March 2013 that he would be removed from the assurance plan. (*Id.*) Defendant advised Plaintiff that "[h]e was removed from the plan since his performance was insufficient to create store profits high enough to be paid off the store." (ECF No. 42 at Pg ID 675.)

Defendant alleges that Plaintiff's compensation was reduced by approximately $700.00 a week after his removal from the assurance plan in March 2013. (ECF No. 35 at Pg ID 338.) Plaintiff disagrees, alleging that the decrease in compensation varied monthly and "was as high as $1,182 in one month." (ECF No. 36 at Pg ID 422.) Defendant offered Plaintiff the opportunity to transfer to the

---

[1] Plaintiff notes that he was notified of his removal from assurance pay on Valentine's Day, "a day that is supposed to be about family and joy with those who you love." (*Id.*at Pg ID 163-64.)

company's Royal Oak or Madison Heights store "to increase his chances at improving his pay as those stores had higher volume." (*Id.* at Pg ID 339.) Plaintiff chose to remain at the Lapeer location. (*Id.*)

Upon his removal from the assurance plan for the second time, Plaintiff's manager Mr. Gdowski advised Plaintiff that his salary could increase if store profits would increase. (ECF No. 35 at Pg ID 338.) Plaintiff threatened to quit if his income did not increase, and the regional manager "told [Plaintiff] to wait to see if he could do anything." (ECF No. 34 at Pg ID 154.) After no changes in salary occurred for seven months, Plaintiff quit. (*Id.*) Plaintiff resigned from his employer in September 2013 with the job title of Store Manager. (ECF No. 1 ¶ 3.)

## IV. Plaintiff's Motion For Partial Summary Judgment

Plaintiff's motion for partial summary judgment focuses on the issue of constructive discharge. (ECF No. 34.)

To successfully assert a claim of constructive discharge, plaintiff must establish that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person and (2) the employer did so with the intention of forcing the employee to quit and the employee actually quit. *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012); *see also Logan v. Denny's*, 259 F.3d 558, 568-69 (6th Cir. 2001). "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined."

*Savage*, 665 F.3d at 739 (citing *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999)).

The Sixth Circuit considers seven factors in determining the first prong of the constructive discharge analysis:

> Whether a reasonable person would have felt compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan*, 259 F.3d 558, 569 (citing *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Plaintiff argues that Defendant created intolerable working conditions through a reduction in Plaintiff's salary, demotion, and humiliation. Plaintiff alleges he was removed twice from assurance pay within days of his FMLA leave. (ECF No. 34 at Pg ID 156.) Plaintiff calculates that the reduction in pay after his second leave under FMLA was just over 20% in an eight-month period. (*Id.*) Plaintiff suggests that the removal from assurance pay was a demotion, although his title never changed. (*See* ECF No. 37 at Pg ID 621.) Plaintiff describes the second loss of assurance pay on February 14, 2013—Valentine's Day—as humiliating due to the importance of the date. Plaintiff further questions the timing

of informing him of his loss of assurance pay on Valentine's Day when the loss allegedly took effect on December 31, 2012. (ECF No. 34 at Pg ID 163-64.)

Plaintiff argues that the second prong of the constructive discharge analysis is satisfied because Defendant took steps to force Plaintiff to quit by timing his removal from assurance pay to coincide with Plaintiff's FMLA leave. (*Id.* at Pg ID 154.) Plaintiff further alleges that Defendant took no action to help alleviate the loss of pay for Plaintiff. (*Id.*)

Defendant argues that Plaintiff cannot satisfy the requirements for a constructive discharge claim for three reasons. First, Plaintiff was not demoted upon his return from FMLA leave in 2010 or 2013. (ECF No. 35 at Pg ID 350.) Second, Plaintiff's responsibilities did not change from his first FMLA leave until he quit in September 2013. (*Id.*) Third, Plaintiff was not assigned to degrading or menial work. (*Id.*) Overall, Defendant claims that Plaintiff's "working conditions remained unchanged except for the computation of pay." (*Id.*)

This Court finds Plaintiff's Motion for Partial Summary Judgment unpersuasive. Plaintiff fails in applying all but one factor from the Sixth Circuit's analysis in *Logan*. 259 F.3d 558 at 569. Plaintiff's primary argument rests on one factor, "reduction in salary." *Id.* However, as Defendant notes, Plaintiff relies on a case of no precedential value in stating his reduction in pay is sufficient to satisfy the first prong of the constructive discharge standard. Further, both parties

disagree on when Plaintiff was removed from assurance pay and the actual amount of loss. The Court therefore denies Plaintiff's Motion for Partial Summary Judgment.

## V. Defendant's Motion for Summary Judgment

Defendant's motion for summary judgment argues that both Counts I and II of Plaintiff's complaint should be dismissed under Rule 56. Because constructive discharge was discussed in the analysis of Plaintiff's motion, we now turn to the remaining issues: (1) retaliation and (2) intentional infliction of emotional distress.

### 1. Retaliation

In the complaint, Plaintiff alleges that Defendant retaliated against Plaintiff by removing him from assurance pay after being on FMLA leave. (ECF No. 1 ¶ 24.) To establish a prima facie case of FMLA retaliation, Plaintiff must demonstrate that:

> (1) [he] was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was exercising [his] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Killan v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).

As a defense, Defendant can demonstrate it had a legitimate business reason for its action. If Defendant's defense is successful, Plaintiff has an opportunity to

show that Defendant's reason is pretextual. Pretext can be demonstrated "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003); *see also Smith v. Aco, Inc.*, 368 F.Supp.2d 721, 738 (E.D. Mich. 2005).

Defendant concedes that the first three elements of the retaliation claim are satisfied. (ECF No. 35 at Pg ID 342.) Defendant argues that Plaintiff cannot demonstrate a causal connection between Plaintiff's use of FMLA leave and his removal from assurance pay. Defendant alleges that Plaintiff has no evidence of a causal connection other than the removal from assurance pay two months after his return from leave. (*Id.*) Further, Defendant states Plaintiff's removal from assurance pay occurred in March 2013 during the course of his annual evaluation, not while Plaintiff was on FMLA leave.[2] (ECF No. 35 at Pg ID 338.)

Plaintiff's response brief argues there is a causal connection. Plaintiff states in 2010, he was advised he was going to be removed from assurance pay several weeks *after* notifying the company of his injury and need for time off. (ECF No. 34 at Pg ID 153.) Defendant disagrees. Defendant says Plaintiff was told he would be removed in September 2010, *before* Plaintiff requested FMLA leave. (ECF No. 35 at Pg ID 337-38.)

---

2 Defendant also discusses the removal of other managers from assurance pay during this time period. (ECF No. 35 at Pg ID 343.)

The parties also disagree on the facts surrounding Plaintiff's second leave under FMLA. Plaintiff states he was taken off assurance pay while on FMLA leave in December of 2012, but he was not notified of this change until weeks after he returned from FMLA leave. (ECF No. 34 at Pg ID 153.) Defendant, however, alleges that the decision to remove Plaintiff occurred in December, but did not take effect until after Plaintiff returned from FMLA leave. (ECF No. 35 at Pg ID 338.) Defendant explains that the decrease of Plaintiff's compensation in January and February are because Plaintiff did not receive commission due to being off on FMLA.

The claim of retaliation turns on when Plaintiff was removed from assurance pay when he took FMLA leave both in 2010 and 2012. Because the parties dispute the facts surrounding Plaintiff's removal from assurance pay, Defendant's motion for summary judgment on retaliation is denied.

**2. <u>Intentional Infliction of Emotional Distress</u>**

To set forth a claim for intentional infliction of emotional distress, Plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Gibbs v. Voith Industry Servs.*, 60 F.Supp.3d 780, 801 (E.D. Mich. 2014). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

community." *Id.* at 802 (citing *Lavack v. Owen's World Wide Enter. Network, Inc.*, 409 F.Supp.2d 848, 857 (E.D. Mich. 2005).

Defendant argues that Plaintiff is unable to establish a successful claim for intentional infliction of emotional distress. (ECF No. 35 at Pg ID 352.) In his response to Defendant's motion, Plaintiff agrees to dismiss his intentional infliction of emotional distress claim. (ECF No. 36 at Pg ID 424.)

## VI. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 34) is **DENIED;**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 35) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claim for intentional infliction of emotional distress is **DISMISSED WITH PREJUDICE.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 30, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 30, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager